1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT FOR THE
7                    EASTERN DISTRICT OF CALIFORNIA
8
9   MICHAEL J. COLLINS,              )    CIV F 06-1608 AWI  WMW
                                     )
10              Plaintiff,           )    ORDER RE DEFENDANTS'
    v.                               )    MOTION TO DISMISS FOR
11                                   )    FAILING TO EXHAUST
    KATHY MENDOZA-POWERS, et al.,    )    ADMINISTRATIVE
12                                   )    REMEDIES
              Defendants.            )
13  _____)
14
15          This is a prisoner civil rights case brought by Plaintiff Michael Collins ("Collins") against
16  individuals at Avenal State Prison.  Collins alleges that his Eighth Amendment rights were
17  violated by Defendants because they allowed 14 months to pass before Collins was examined by
18  an orthopedist and received knee surgery.  Defendants move to dismiss the complaint for failure
19  to exhaust administrative remedies.  For the reasons that follow, the motion will be denied.
20
21                              **BACKGROUND**[1]
22          On March 14, 2005, Collins was diagnosed with degenerative joint disease in his left
23  knee.[2]  Collins submitted a Reasonable Modification or Accommodation Request Form (CDC
24  1824)[3] dated April 4, 2005.  The form is stamped "received" on May 5, 2005.  Diego Declaration
25  _____
26     [1]The facts are generally undisputed and taken from the complaint or Exhibits from the Diego declaration.

27     [2]The Complaint indicates that a medical note dated May 4, 2005, indicates that Collins had severe
    osteoarthritis in both knees, but worse in the left knee, and that he was to be referred to an orthopedist.
28
       [3]Form 1824 is a document utilized by inmates who have disabilities.  Hereinafter the Court will refer
    generally to "Form 1824."

Exhibit 1.  Collins described his problem as his knee would constantly "lock up" and that he was in severe pain.  Id.  Under the "specific modification or accommodation [] requested" section (hereinafter "relief requested section") of the 1824 Form, Collins indicated that he was requesting surgery.  Id.  Dr. H. Smith interviewed and examined Collins and concluded that Collins would be referred to an orthopedic specialist.  Id.  On May 16, 2005, Collin's request was granted and the appeal form indicates that "referral submitted to see specialist regarding your knee."  Id.

By November 2005, Collins had yet to see an orthopedist.  On November 2, 2005, Collins submitted a Second Form 1824.  See Diego Declaration Exhibit 2.  Collins described his problem as pieces of bones had chipped off his knee, that the pain was unbearable, that he needed an MRI, and that he needed to be medically unassigned.  Id.  Under the relief requested section, Collins said that nothing had been done about his knee and that he "would like to be medically transferred somewhere where they can help me with my problem . . . ."  Id.  On February 16, 2006, Collins's request was "partially granted."  The reviewing officer wrote that an MRI had been completed, the results were still pending, and that a "referral for services form has been submitted to the specialist on your behalf."  Id.

On November 15, 2005, Collins submitted a Third Form 1824.  See Diego Declaration Exhibit 3.  Collins again described his problem as bone chips moving around in his knee, that he needed an MRI, and that nothing was being done for him.  Id.  Under the relief requested section, Collins wrote, "I'm asking to be medically transferred to an orthopedic specialist in Riverside County Hospital . . . . My appeal was Granted by [Dr. Smith], now its been 6 months.  The pain is unbearable.  I need help."  Id.  On November 23, 2005, Collins's request was partially granted. The reviewer stated that Collins was scheduled for an MRI and that he would be seen by December 30, 2005.  Id.  However, Collins then filled out the "Formal Level" section of the Form 1824 on November 28, 2005.  Under the formal level section, Collins wrote, "Anticipate that you will be hearing from the California Victim Compensation and Government Claims Board . . . by 12-30-05 or before, I need to be transferred to a medical institution, before I loose my leg and it's this prison fault [sic]."  Id.  Under this portion of the Third Form 1824 is a stamp marked "received" on November 29, 2005.  Id.  On March 10, 2006, a reviewer again partially granted

1   Collins's request/appeal.  The reviewer indicated *inter alia* that Collins had been given a walking

2   cane and pain medication, that an "orthopedic referral was submitted on your behalf," and that a

3   follow up appointment would occur in 1 to 2 months.  Id.

4        On March 2, 2006, Collins filled out a Fourth Form 1824 and requested that he be

5   "medically unassigned" due to the problems with his knees.  See Diego Declaration Exhibit 4.

6   This request was granted on April 7, 2006.  Id.

7        Additionally, attached to Collins's opposition is a memorandum addressed to Collins from

8   Defendant Madruga dated March 23, 2006.  The memo indicates in part that a referral for an

9   orthopedic consultation was submitted on February 17, 2006, and that "We have not had the

10  services of an orthopedist for several months now, but I have left messages for the off-site

11  scheduler regarding the status of your referral; however, as of this writing, I have not received an

12  answer."

13       On May 9, 2006, Collins filled out a Fifth Form 1824.  See Diego Declaration Exhibit 5.

14  Collins described his problem in part as his legs were beginning to deform due to a lack of

15  medical treatment, that he could barely walk, that sometimes he could barely sit, and that he had

16  severe pain.  See id.  Under the relief requested section, Collins requested that he be transferred to

17  Vacaville State Prison for his surgery and that he be transferred back to Avenal after his recovery.

18  See id.  This request was partially granted.  See id.  Under the discussion of findings, the reviewer

19  indicated that the reviewing physician's assistant had "referred [Collins] to the orthopedist;

20  however, Avenal . . . outpatient referral has yet to find an orthopedist to see [Collins].  As soon as

21  an orthopedist is available, [Collins] (who is already on the list to be sent out) will be evaluated.

22  There is no reason why [Collins] needs to be transferred to Vacaville."  Id.  Under the disposition

23  section, the "partially granted" box is checked and the basis of the decision reads in part, "Referral

24  has been submitted for orthopedic evaluation, and this appointment is pending.  There is no

25  medical reason to transfer [Collins] to Vacaville."  Id.

26       On July 6, 2006, Collins was seen by an orthopedist.  On July 25, 2006, Collins had knee

27  surgery.  On November 9, 2006, Collins filed this civil rights lawsuit against Defendants based on

28  the 14 month delay in receiving orthopedic treatment and alleged violations of 42 U.S.C. § 1983

1   for violating the Eighth Amendment, California Government Code § 845.6, and California Civil

2   Code § 52.1(b).  Defendants then filed a motion to dismiss for failure to exhaust administrative

3   remedies.

**DEFENDANTS'S MOTION**

4

5   *Defendants's Argument*

6       Defendants argue that Collins was required to exhaust all administrative remedies before

7   bringing this lawsuit.  In California, there is a four tiered administrative process for prisoner

8   grievances.  Collins did not go beyond the first level of this administrative appeal process with

9   respect to any of his Form 1824's.  Collins was obviously dissatisfied with the resolution of his

10  complaints, but he did not pursue any of them to the next administrative level and instead filed

11  new requests.  Because Collins did not follow the administrative process, he cannot bring this suit.

12      *Plaintiff's Opposition*

13      Collins argues that when his first Form 1824 was granted, the notification indicated that

14  Collins could "appeal any policy, action or decision which as significant adverse effect upon you."

15  Diego Declaration Exhibit 1.  Here, Defendants did not take any action or make a decision that

16  had a significant adverse effect on Collins.  Instead, Defendants simply delayed for 14 months

17  before effectuating the referral to an orthopedic surgeon.  Collins won his initial his

18  request/appeal at a lower administrative level, and after he received his treatment, there was no

19  further remedy available.

20      *Legal Standard*

21      Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "No action shall be

22  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

23  prisoner confined in any jail, prison, or other correctional facility until such administrative

24  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  For purposes of the PLRA, "an

25  action is 'brought' . . . when the complaint is tendered to the district clerk, and not when it is

26  subsequently filed."  Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006).  The PLRA

27  exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534

28  U.S. 516, 532 (2002), and prisoners must complete the prison's administrative process, regardless

4

of the relief sought by the prisoner and regardless of the relief offered by the process, so long as the administrative process can provide some sort of relief on the complaint stated. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A "prisoner need not exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or been reliably informed by an administrator that no remedies are available." <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005). The PLRA requires proper exhaustion and a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative appeal or grievance. <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006). Exhaustion of the prison's administrative process must occur prior to bringing suit. <u>See</u> <u>Vaden</u>, 449 F.3d at 1050; <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

However, § 1997e(a) does not impose a pleading requirement, and the failure to exhaust administrative remedies is an affirmative defense that may be raised through an unenumerated Rule 12(b) motion. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). The "defendants have the burden of raising and proving the absence of exhaustion." <u>Id.</u> Because "there can be no 'absence of exhaustion' unless some relief remains 'available,' a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." <u>Brown</u>, 422 F.3d at 936-37. In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. <u>Wyatt</u>, 315 F.3d at 1119-20. Evidence that is relevant to demonstrating that some relief remained available, and thus an absence of exhaustion, include official directives or regulations that explain the administrative process, documentary or testimonial evidence from prison officials who review the process, and information provided to the prisoner concerning the grievance process, including the response or decisional memoranda of a grievance. <u>See</u> <u>Brown</u>, 422 F.3d at 937. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. <u>Wyatt</u>, 315 F.3d at 1119-20.

The California Department of Corrections has a four step administrative grievance process for prisoners: (1) an informal level; (2) a first formal level; (3) a second formal level; and (4) a

1   third formal level appeal to the director of the Department of Corrections.  See Cal. Code Regs.

2   tit. 15, § 3084.5; Vaden, 449 F.3d at 1048-49; Brown, 422 F.3d at 929-30.  California regulations

3   also provide that a prisoner "must submit the appeal within 15 working days of the event or

4   decision being appealed, or of receiving an unacceptable lower level appeal decision." Cal. Code

5   Regs. tit. 15, § 3084.6(c).

6          *Discussion*

7          This case is about Collins's request to see an orthopedist so that he could get orthopedic

8   surgery on his knee.  Defendants have submitted copies of six Form 1824's made by Collins.  The

9   Fourth Form 1824 involves his designation at Avenal and the Sixth post-dates the surgery and

10  involves pain medications.  Accordingly, the First, Second, Third, and Fifth Form 1824's are

11  relevant to the resolution of this motion.

12         The First Form 1824 in May 2005 sought surgery, which was interpreted as necessitating a

13  consultation with an orthopedic specialist.  See Diego Declaration Exhibit 1.  That request was

14  granted.  The subsequent Form 1824's relate, in some respect, to the lack of an orthopedic

15  consultation despite the granting of the First Form 1824.  However, the subsequent Form 1824's

16  were not identical to the First.  The Second Form 1824 in November 2005 specifically asked for a

17  general medical transfer to some place that could help Collins.  See Diego Declaration Exhibit 2.

18  The Third Form 1824 specifically asked for a transfer to Riverside County Hospital so that Collins

19  could see an orthopedic specialist.  See Diego Declaration Exhibit 3.  The Fifth Form 1824

20  specifically asked for a transfer to Vacaville prison for his surgery.  See Diego Declaration Exhibit

21  5.  Each of these Form 1824's were partially granted and each of the responding or decisional

22  memoranda indicated that Collins had been referred to an orthopedist.  See Diego Declaration

23  Exhibits 2, 3, and 5.  Further, although only the Fifth Form 1824's decisional memorandum

24  expressly states that a transfer would be denied, it appears that Collins was never transferred.

25         In light of the above, the Court is not persuaded by Defendants's arguments.  In the

26  memorandum in support of the motion to dismiss, Defendants do not address what remedies were

27  available to Collins.  Instead, the memorandum simply argues that Collins never went beyond the

28

1   first informal level of appeal.  Assuming that this is a correct characterization of the record,[4]   the

2   fact that Collins did not go beyond the first, or informal, level of the administrative process does

3   not in and of itself show the absence of available remedies.  The burden on Defendants entails a

4   showing that some form of relief was in fact available.  See Brown, 422 F.3d at 936-37.  From the

5   First Form 1824 to the Fifth Form 1824 request, the relevant relief was granted each time: Collins

6   was to be or had been referred to an orthopedic specialist.  In other words, the responses to each

7   Form 1824 request indicated that Collins would be seen by an orthopedist.  The motion to dismiss

8   does not indicate what further relief was available to Collins, especially in light of these grants

9   and the March 23, 2006, memo that indicates Avenal was without an orthopedist and that Collins

10  was on the referral list.  Although the requested transfers in the Second, Third, and Fifth Form

11  1824's were not granted, the failure to transfer is not the subject of the complaint.  Instead, the

12  subject of the complaint is the 14 month delay in seeing an orthopedist, as measured from the First

13  Form 1824.

14          This case appears to be one in which an initial request/grievance was granted, but was

15  untimely implemented.[5]  Stated differently, this case involves a failed implementation.  The

16  Second Circuit has held that, "where prison regulations fail to provide a remedy for

17  implementation failures, prisoners who receive a favorable outcome to their initial grievance that

18  remains unimplemented have fully exhausted their available remedies."  Ruggiero v. County of

19  Orange, 467 F.3d 170, 176 (2d Cir. 2006) (explaining Abney v. McGinnis, 380 F.3d 663 (2d Cir.

20  2004)).  Citing to Seventh Circuit authority, the Second Circuit sought to avoid a situation in

21  which prisoners who won their grievance in principle would have to file another grievance to win

22  in fact, resulting in a never-ending cycle of grievances.  Abney, 380 F.3d at 669 (citing Dixon v.

23  Page, 291 F.3d 485, 490 (7th Cir. 2002)).

24          While not identical, the situation in *Abney* appears similar to the case at bar.  In *Abney*, the

25

26          [4]The declaration of Jesus Diego indicates that none of Collins's Form 1824 requests were pursued beyond

27  the first informal level, see Diego Declaration at ¶ 10, but it appears that the November 15, 2005, was appealed to
    the second level of appeal, i.e. the first formal level.  See Diego Declaration Exhibit 3.

28          [5]The Court is not judging the merits of the complaint and expresses no opinion as to the validity of Collins's
    claims or the Defendants's culpability or liability.

prisoner had "repeatedly obtained favorable rulings" on his grievances, the "defendants never implemented the rulings," the New York regulations did not have a mechanism to appeal implementation failures, the only remedy reasonably available was to file another grievance, and the prisoner filed other grievances that were granted, but those grants were not implemented. See Abney, 380 F.3d at 669. Abney had grievances granted but had to continue filing new grievances for over two years. See id. That process also seems to have occurred in the case at bar, but lasted 14 months instead of two years.[6]

A court in this district has cited the reasoning of the Second Circuit with approval. In *Valley v. Director of Prisons*, Magistrate Judge Mueller issued findings and recommendations that included denying a motion to dismiss for failure to exhaust:

> Plaintiff's appeal was granted at the first level because the approval for surgery was being "handled" at the "administrative level," suggesting that the approval had been received or was a foregone conclusion. The approval resulted in plaintiff's receiving surgery within just over two months. Defendants have not shown there was a separate appeals process available for implementation failures or what other relief with respect to the medical portion of the grievance plaintiff could have obtained at the Director's Level. They have not borne their burden of proving plaintiff's failure to exhaust the claim on which he is proceeding in this court.

Valley v. Director of Prisons, 2006 U.S. Dist. LEXIS 48058, 10-11 (E.D. Cal. 2006). Magistrate Judge Mueller's findings and recommendations were subsequently adopted in full by District Judge England. Valley v. Director of Prisons, 2006 U.S. Dist. LEXIS 66704 (E.D. Cal. 2006).

Based on the filings and arguments of the parties in this case, the Court finds the analysis of *Valley* to be persuasive. Collins's First Form 1824 was granted at the first or informal administrative level and an orthopedic consultation was to be obtained. The consultation and eventual surgery occurred 14 months later. The subsequent, separate Form 1824's were granted in relevant part since they each indicated that Collins had been referred to an orthopedic specialist. Defendants have not shown that a separate appeals process was available for implementation failures or what other relief was available to Collins through the additional three levels of the grievance process, especially in light of the continued grants of relief and the March 23, 2006

_____

[6]Unlike *Abney*, Collins eventually received his orthopedic consultation and surgery prior to suit. However, there is little question that at least after Collins received his consultation and surgery in July 2006, his requests were satisfied and no further remedies were available. Cf. Gomez v. Winslow, 177 F.Supp.2d 977, 985 (N.D. Cal. 2001).

memo.  Defendants have not met their burden of showing a failure by Collins to exhaust the claim on which he is proceeding in this court, i.e. the 14 month delay in providing him with an orthopedic consultation and surgery.  See Brown, 422 F.3d at 930; Wyatt, 315 F.3d at 1119-20; Ruggiero, 467 F.3d at 166; Abney, 380 F.3d at 669; Valley, 2006 U.S. Dist. LEXIS 48058 at 10-11.

      Accordingly, IT IS HEREBY ORDERED that Defendants's motion to dismiss for failure to exhaust administrative remedies is DENIED.

IT IS SO ORDERED.

**Dated:   September 28, 2007**          _____/s/ Anthony W. Ishii_____
                                    UNITED STATES DISTRICT JUDGE