1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    MICHAEL J. COLLINS,                     CASE NO. 1:06-CV-1608- AWI-GSA

10              Plaintiff,

11        v.                                 FINDINGS AND RECOMMENDATION
                                             DENYING PLAINTIFF'S MOTION FOR
                                             SUMMARY JUDGMENT
12   KATHY   MENDOZA-POWERS;   JEANNE
     WOODFORD;   WILLIAM   McGUINNESS,       (Doc. 31)
13   M.D.; SAMPATH KUMAR SURYADEVARA,
     M.D.; S. MADRUGA
14
15              Defendants.

16

17   _____/

18   I.    Plaintiff's Motion for Summary Judgment

19         A.    Procedural History

20         Plaintiff Michael J. Collins ("Plaintiff") is a state prisoner proceeding in this civil rights

21   action alleging violations of 42 U.S.C. § 1983, California Government Code § 845.6, and California

22   Civil Code § 52.1.   Plaintiff filed his compliant on November 9, 2006, wherein he alleged that

23   Defendants violated the Eighth Amendment by acting with deliberate indifference to his serious

24   medical needs.   He also alleges Defendants violated California Government Code § 845.6 by

25   knowing or having reason to know of Plaintiff's need for immediate medical care, and failing to

26   reasonably summon such care.  (Doc. 1).

27         Specifically, Plaintiff alleged that during his incarceration at the Avenal State Prison,

28   Defendants KATHY MENDOZA-POWERS, Warden of Avenal State Prison, JEANNE

1

1  WOODFORD, Director of the California Department of Corrections and Rehabilitation ("CDC"),

2  WILLIAM McGUINNESS, M.D., Chief Medical Officer at the Avenal State Prison, SAMPATH

3  SUMAR SURYADEVARA, M.D., Chief Medical Officer at the Avenal State Prison, and S.

4  MADRUGA, a Staff Services Analyst for Medical Appeals at Avenal State Prison were deliberately

5  indifferent to his medical needs beginning March 2005 through July 2006, by failing to provide him

6  with appropriate medical treatment for degenerative joint disease in his knees.

7      On June 20, 2007, Defendants Medoza-Powers, McGuiness, Suryadevara and Madruga filed

8  a motion to dismiss alleging that Plaintiff failed to exhaust his administrative remedies.  (Doc. 23).

9   On October 1, 2007, the court denied Defendants' Motion to Dismiss. (Doc. 27).

10      Pending before the court is Plaintiff's motion for summary judgment against Defendants

11  McGuinness, M.D., and Suraydevara, M.D. which was filed on August 14, 2008. (Doc.  31).

12  Defendants filed an opposition to the motion on September 5, 2008.  (Doc. 33).  While Defendants

13  have not filed a motion for summary judgment, they have argued in their opposition that summary

14  judgment should be granted in their favor. [1]  Plaintiff filed a reply to Defendant's opposition on

15  September 17, 2008. (Doc. 34).  The court has reviewed the papers and has determined that these

16  matters are suitable for decision without oral argument pursuant to Local Rule 78-230(h).  Upon

17  consideration of all the pleadings, this court will recommend that Plaintiff's motion for summary

18  judgment be DENIED WITHOUT PREJUDICE.  To the extent that Defendants intended their

19  _____

20      [1] The court notes that Defendants' attempt to move for summary judgment in their opposition, rather than
   file a separate cross motion for summary judgment is defective.  The court has reviewed Defendants' opposition and

21  finds that it does not comply with the requirements set forth in Local Rule 56-260(a).  Defendants must file a
   separate motion for summary judgment which must be accompanied by a statement of undisputed facts in which each

22  fact is separately set forth and is followed by a citation to the "particular portions of any pleading, affidavit,
   deposition interrogatory answer, admission or other document relied upon to establish that fact."  Local Rule 56-

23  260(a).
      Defendants makes arguments in paragraph form and cites to facts in support of those arguments.  However,

24  it is unclear if Defendants are assuming that these facts are undisputed as Defendants have not identified them as
   such.  Additionally, while Defendants' reference page numbers in exhibits attached to Plaintiff's motion for summary

25  judgment, these references  are inadequate.  First, pursuant to Rule 56-260(a), the moving party shall be responsible
   for the filing of all evidentiary documents cited to in their moving papers.  Citing to Plaintiff's exhibits in

26  Defendants' motion for summary judgment is not proper.  Further, as outlined in section F(1)(b) of ths order,
   Defendants cite to pages that are not contained in the exhibits attached to Plaintiff's motion which have been filed

27  with the court.   In fact-specific cases, the court is disinclined to overlook the failure to comply with the mandate of
   Local Rule 56-260(a).  The responding party should be able to quickly ascertain what facts offered by Defendant are

28  to be contested and what evidence is relied upon in support of each fact.

1  opposition to be a motion for summary judgment, the court will recommend that Defendant's motion

2  be DENIED WITHOUT PREJUDICE as it failed to follow Local Rule 56-260.

3       B.    Legal Standard

4       Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

5  as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

6  Civ. P. 56(c).  Under summary judgment practice, the moving party

7            [A]lways bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
8            pleadings, depositions, answers to interrogatories, and admissions on
             file, together with the affidavits, if any," which it believes
9            demonstrate the absence of a genuine issue of material fact.

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

11       With regard to a plaintiff's motion for summary judgment, "...[w]here the moving party has

12  the burden of proof,...his showing must be sufficient for the court to hold that no reasonable trier of

13  fact could find other than for the moving party."  Calderone v. United States, 799 F.2d 254, 259 (6th

14  Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining

15  Issues of Material Fact 99 F.R.D. 465, 487 (1984)).  Thus, on a summary judgment motion, the

16  moving party must demonstrate there is no triable issue as to the matters alleged in its own pleadings.

17  Id.  This requires the moving party to establish beyond controversy every essential element of its

18  claim or defense.  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).  The moving party's

19  evidence is judged by the same standard of proof applicable at trial.  Anderson v. Liberty Lobby,

20  Inc., 477 U.S. 242 (1986).

21       If the moving party meets its initial responsibility, the burden then shifts to the opposing

22  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

23  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

24  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

25  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

26  material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586

27  n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

28  might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

C.      Plaintiff's Complaint

In the complaint, Plaintiff alleges that on March 1, 2005, while he was incarcerated at Avenal State Prison, he had a medical appointment with Michael P. Ress, M.D. and complained that his left knee was locking up and that he could feel chipped bones moving around inside of it.  Complaint

4

1    at pg. 4.  On March 14, 2005, Plaintiff alleges that Michael P. Ress, M.D. noted in Plaintiff's chart

2    that he had degenerative joint disease in his left knee.  Id.  Plaintiff alleges that an Interdisciplinary

3    Progress Note dated May 4, 2005, indicates that Plaintiff had severe osteoarthritis in both knees

4    which was worse on the left, and the plan was for him to be referred to an orthopedic specialist.  Id.

5          Plaintiff contends that he sent a Reasonable Modification or Accommodation Request Form

6    (CDC 1824) to the Appeals Coordinator's Office at Avenal State Prison dated April 4, 2005.  Id.

7    The form is allegedly stamped "RECEIVED" on May 5, 2005, by the Avenal State Prison Appeals

8    Office.  Id.  Plaintiff alleges that he filled out this form because his knee was locking up and was

9    causing him unbearable pain that was not relieved by pain medication.  Plaintiff alleges that Dr.

10   Brian Rees told him that he was in need of surgery.  Id.

11         Plaintiff alleges that on May 7, 2005, H. Smith, M.D. issued a memorandum to Plaintiff

12   stating that Plaintiff's  appeal was granted and that he would be referred to an orthopedic specialist.

13   Id. at 5.  On May 16, 2005, Defendant S. Madruga issued an Inmate/Parole Appeal Form (CDC 602)

14   stating that Plaintiff's appeal was granted and that a referral would be submitted for Plaintiff to see

15   an orthopedic specialist regarding his knee.  Id. at 5.

16         Plaintiff alleges that by November 15, 2005, Plaintiff had still not been referred to an

17   orthopedic specialist and he submitted another CDC 1824 to the Appeals Coordinator's Office at

18   Avenal State Prison informing officials that is mobility was impaired, and that he could feel pieces

19   of bone moving around in his knees.  Id. at 6.  Plaintiff alleges that on the back of the CDC 1824

20   form, someone wrote "Recategorized as a CDC 602 medical issue.  Use attached CDC 602 for

21   response." Id. at 6.

22         Plaintiff alleges that Dr. Ress referred Plaintiff to the Radiology Diagnostic Center for a MRI

23   of both of his knees.  Id. at 6.  Plaintiff alleges that the MRI report dated November 29, 2005,

24   revealed severe degenerative joint disease in both knees which was more pronounced in the left knee,

25   a chronic tear of the anterior cruciate ligament on the right knee, and extensive degenerative changes

26   of the lateral meniscus with a complex tear and degenerative changes involving the anterior horn and

27   an oblique tear in the posterior horn of the left knee.  Id. at 6.

28         On December 6, 2005, Plaintiff allegedly wrote to the Division of Correctional Health Care

Services (DCHCS), California Department of Corrections and Rehabilitation, informing the DCHCS of the difficulties he was having with his knees and the lack of medical care he was receiving at Avenal State Prison. Id. at 6. Plaintiff reiterated that the pain was unbearable, and that the MRI had confirmed that surgery was necessary. Id. at 6. On December 9, 2005, Plaintiff also filled out a Health Care Services Request Form at Avenal State Prison informing officials that despite several previous requests, he had been trying to see a doctor since October 14, 2005, and that his knees were damaged due to the lack of medical treatment over the past six months. Id. at 6.

On December 28, 2005, Plaintiff was allegedly seen by members of the medical staff at Avenal State Prison. Id. at 7. The medical notes allegedly indicate that Plaintiff had degenerative disc disease of the knees with intrarticular loose bodies in the left knee, and that an orthopedic specialist referral was indicated. Id. at 7.

On February 12, 2006, Plaintiff alleges that he submitted another CDC 1824 to the Appeals Coordinator's Office at Avenal State Prison indicating that he was disabled due to continued chronic knee pain. Id. at 7. On March 23, 2006, Defendant Madruga allegedly sent Plaintiff a memorandum regarding his previous request for orthopedic services and indicated that a referral was submitted on February 17, 2006, for an orthopedic consultation, but that Avenal State Prison had not had the services of an orthopedic for several months. Id. at 7.

Plaintiff allegedly had not received a referral to see an orthopedic specialist by May 9, 2006, and he submitted another CDC 1824 Form to the Appeals Coordinator's Office at Avenal State Prison, requesting a transfer to Vacaville State Prison. Id. at 7. On May 15, 2006, a physician assistant at the Avenal State Prison interviewed Plaintiff and prepared a response to his transfer request stating that Plaintiff had been referred to an orthopedist, however, Avenal State Prison outpatient referral had been unable to find an orthopedist to see him. Id. at 7. Plaintiff's request for transfer was allegedly denied. Id. at 7. On July 6, 2006, Plaintiff was taken to see an orthopedic specialist who evaluated his knees and recommended surgery. Id. at 7. Plaintiff finally had surgery on his left knee on July 25, 2006. Id. at 7.

Based on the above, Plaintiff filed the instant action alleging a violation of his Eighth

Amendment rights because Defendants were deliberately indifferent to his serious medical need. Plaintiff filed the instant action alleging a violation of 42 U.S.C. § 1983 (first cause of action), a violation of California Government Code § 845.6, and is claiming damages pursuant to California Civil Code § 52.1 (third cause of action).  Plaintiff seeks compensatory, statutory, punitive, general, exemplary, and special damages; costs; attorney's fees; and other relief that the court deems just and proper.

D.    Summary of Undisputed Material Facts

1.  Plaintiff Michael Collins has been an inmate at Avenal State Prison since February 5, 2005.  Declaration of Michael Collins ¶ 1, ( Exhibit 1.) [2]

2.  When an inmate has a medical problem he can get an appointment with a doctor at the prison by filing out a request for interview slip.  Deposition of Kathy Mendoza-Powers, 32:15-20 (Exhibit 2).

3.  On March 1, 2005, Plaintiff filled out a Health Care Services Request Form (CDC 7362) because of pain he was experiencing in his left knee.  Declaration of Michael J. Collins ¶ 3 (Exhibit 1); Health Services Request Form, CDC 7362 dated March 1, 2005, (Exhibit 3, Bates Stamp 241).[3]

4.  A yard doctor will review an inmate's Request for Service Form and make a determination whether the patient should see a specialist. Deposition of Sampath Kumar Suryadevara, M.D. 29:22-30:20 (Exhibit 4).

5.  On April 4, 2005, Plaintiff filed an appeal by filing out a Reasonable Modification or Accommodation Request Form (CDC 1824), requesting surgery on his left knee. Declaration of Michael J. Collins ¶ 4 (Exhibit 1), CDC 1824 dated April 4, 2005 (Exhibit 5, Bates Stamp 0081).

6.  Plaintiff requested surgery because his knee was causing him unbearable pain.

---

[2] Defendants objects to Plaintiff's UMF # 2,3,4 on the basis that they are not material.  The court agrees that these facts are immaterial for purposes of this motion. Accordingly, these facts have not been included in this summary.

[3] Defendants have objected to this fact on the basis that although it is undisputed that Plaintiff filled out the form, Plaintiff is not qualified to give an opinion as to the causes of his pain.  Defendants' objection is sustained. Plaintiff is not qualified to give a medical opinion.   Plaintiff can provide a subjective opinion regarding the extent of his pain, but not an opinion regarding the causes of his pain. This UMF has been modified accordingly.

1  Declaration of Michael J. Collins ¶ 6 (Exhibit 1).

2      7.  H. Smith, M.D. interviewed Plaintiff at Avenal State Prison and evaluated Plaintiff's left

3  knee. Declaration of Michael J. Collins ¶ 6 (Exhibit 1).[4]

4      8.  Plaintiff received a response to his first level appeal from Dr. Smith on May 7, 2005,

5  indicating that his appeal to see an orthopedic had been granted.  Declaration of Michael J. Collins

6  ¶¶ 7, 8 (Exhibit 1); Deposition of William J. McGuinness, M.D. 59: 7-12 (Exhibit 6). [5]

7      9.  On May 14, 2005, Medical Appeal Coordinator Sharon Madruga informed Plaintiff in

8  writing that his appeal submitted on April 4, 2005 had been granted and that he would be referred

9  to an orthopedic specialist.  Declaration of Michael J. Collins ¶9  (Exhibit 1) Reasonable

10  Modification or Accommodation Form (CDC 1824) dated April 4, 2005 (Exhibit 5, Bate Stamp

11  0082).

12      10.  There has to be a determination made by the Medical Department that an inmate has a

13  medical necessity for the inmate to receive a referral to an orthopedic specialist.  Deposition of

14  William J. McGuinness, M.D. 51: 6-13 (Exhibit 6); Deposition of Sampath Kumar Suryadevara,

15  M.D. 25:25-26:4 (Exhibit 4).

16      11.  After Dr. Smith approved Plaintiff's request to see an orthopedic surgeon, Plaintiff

17  would have been sent to the utilization nurse with the request for healthcare services and the nurse

18  would have brought the issue to the attention of the Chief Medical Officer at the prison.  Deposition

19  of Sampath Kumar Suryadevara, M.D.  36:14-20  (Exhibit 4).

20      12.  On June 15, 2005, Plaintiff was dispensed an elastic knee support by the medical staff

21  at Avenal State Prison, but Plaintiff had not been seen by an orthopedic specialist. Declaration of

22

23      [4] Defendant's objection to this fact based on a lack of foundation is overruled.  On summary judgment,
24  evidence need not be in a form that is admissible at trial.  See, Burch v. Regents of the University of California, 433
    F. Supp. 2d 1110, 1118-24 (E.D. Cal. 2006).  Accordingly, as long as a party submits evidence, which, regardless of
25  its form, may be admissible at trial, it may be considered on summary judgment. Burch, at 1120 (citing, Fraser v.
    Goodale, 342 F. 3d 1032, 1036-37 (9th Cir. 2003)).  Here, Plaintiff may have Dr. Smith testify that he examined
26  Plaintiff.  Alternatively, Plaintiff may testify that Dr. Smith examined him.  The extent to which the trier of fact
    believes Plaintiff's testimony goes to the weight of the evidence rather than to the admissibility.

27

28      [5] Defendants' objection to this fact based on a lack of foundation is overruled for the reasons articulated in
    footnote 4 supra.

1   Michael J. Collins ¶ 10  (Exhibit 1).[6]

2        13.  On November 29, 2005, Plaintiff underwent an MRI study on both knees at Radiology

3   Diaognostic Center because of his continuing knee pain.  Declaration of Michael J. Collins ¶ 11

4   (Exhibit 1). [7]

5        14.  Plaintiff submitted a Health Care Services Request Form (CDC 7362) to the Medical

6   Department at Avenal State Prison on December 9, 2005, requesting medical treatment for his knee.

7   Declaration of Michael J. Collins ¶ 12  (Exhibit 1); Health Care Request Form (CDC 7362) dated

8   December 9, 2005 (Exhibit 7, Bate Stamp 00235).[8]

9        15.  A CDC 7362 is a form that a patient fills out and hands to a nurse in the yard for them

10  to be seen by a doctor or one of the nurses. Deposition of William J. McGuinness, M.D. 81: 21-23.

11  (Exhibit 6).

12       16.  Defendant William J. McGuinness, M.D. became Chief Medical Officer at Avenal State

13  Prison on December 12, 2005. Deposition of William J. McGuinness, M.D. 21: 13-22 (Exhibit 6).

14       17.  As Chief Medical Officer, Defendant William McGuinness, M.D. was employed by the

15  California Department of Corrections and Rehabilitation.  Deposition of William J. McGuinness,

16  M.D. 29: 13-18. (Exhibit 6).

17       18.  Defendant William J. McGuinness, M.D. was the acting Chief Medical Officer at Avenal

18  State Prison until May 10, 2006.  Deposition of William J. McGuinness, M.D.  24: 4-12. (Exhibit 6).

19       19.  A physician's Order prepared on December 28, 2005 indicates that an "orthopedic

20  referral, 7243 completed," meaning there was a request for services requesting that Plaintiff see an

21  orthopedic surgeon.   Deposition of William J. McGuinness, M.D. 66: 22-67:22. (Exhibit 6);

22  Physician's Order dated December 18, 2005 (Exhibit 18, Bate Stamp 0019).

23

24
    _____

25    [6] Defendants object to this fact because it is immaterial, however, this fact is material as it relates to medical
    treatment Plaintiff received.  Defendants' objection is overruled.

26    [7] Defendants object to this fact because it is immaterial, however, this fact is material as it relates to the
    medical treatment Plaintiff received.  Defendant's objection is overruled.

27

28    [8] Defendants object to this fact because it is immaterial, however, the facts is material as it relates to
    Plaintiff's request for medical treatment.  Defendants' objection is overruled.

20.    When Defendant William J. McGuinness, M.D. took over as Chief Medical Officer at Avenal State Prison, there was a problem with getting inmates access to medical care.  Deposition of William J. McGuinness, M.D. 27: 14-22. (Exhibit 6).

21.  It was Defendant William J. McGuinness' responsibility as Chief Medical Officer to oversee all aspects of care and treatment in the Medical Department of Avenal State Prison. Deposition of William J. McGuinness, M.D. 97: 1-9. (Exhibit 6).[9]

22.  Defendant William J. McGuinness, M.D. knew when he arrived at Avenal State Prison that there had been a problem for sometime with a back logging of orthopedic referrals. Deposition of William J. McGuinness, M.D. 40:25-41:5. (Exhibit 6).

23.    There was a backlog of about 20 orthopedic referrals when Defendant William J. McGuinness M.D. took over as Chief Medical Officer at Avenal State Prison.  Deposition of William J. McGuinness, M.D. 27:25-28-24.  (Exhibit 6).

24.    Dr. McGuinness was conscious of the fact that there were inmates with orthopedic problems that were not getting the care that they required when he took over as Medical Officer at Avenal State Prison.  Deposition of William J. McGuinness, M.D. 41: 7-11. (Exhibit 6).

25.  The general surgeon who came to Avenal State Prison once a week to perform surgical procedures did not perform orthopedic surgeries, so he was useless in terms of addressing inmates who had orthopedic problems that may require surgical intervention.  Deposition of William J. McGuinness, M.D. 30:21-31:11.  (Exhibit 6).

26.    It was within Defendant William J. McGuinness, M.D. authority as Chief Medical Officer to take it upon himself to obtain a referral to a specialist for an inmate if the matter was severe enough that it required immediate emergency attention.  Deposition of William J. McGuinness, M.D. 34:21-11-14.  (Exhibit 6).

27.  It is the Chief Medical Officer's responsibility for contracting with specialty doctors who

---

[9] Defendants' objection based on the fact that his statement calls for a legal conclusion regarding responsibility is overruled.

1  are in their matrix to treat inmates who need specialty care.[10]  Deposition of Sampath Kumar

2  Suryadevara, M.D. 41:10-19.  (Exhibit 4).

3      28.  The normal protocol is that when a physician in the Medical Department signs a request

4  for a referral to an orthopedic surgeon, the referral comes to the Chief Medical Officer's desk for

5  approval.  Deposition of William J. McGuinness, M.D. 91:20-92:13.  (Exhibit 6).

6      29.  On February 17, 2006, Plaintiff filed out another Health Care Services Request Form

7  (CDC 7362) and was examined by Avenal's medical staff that same day.  Declaration of Michael J.

8  Collins ¶ 14  (Exhibit 1); Health Care Service Request Form dated February 17, 2006 (Exhibit 8, Bate

9  Stamp 0045 ); Outpatient Interdisciplinary Progress Note from Avenal State Prison with entry dated

10  February 17, 2006 (Exhibit 9, Bate Stamp 0042).

11      30.  During the February 17, 2007 examination, Plaintiff complained to the medical staff that

12  he continued to have left knee pain even after taking the prescribed Motrin.  Declaration of Michael

13  J. Collins ¶ 15  (Exhibit 1); Outpatient Interdisciplinary Progress Note from Avenal State Prison with

14  entry dated February 17, 2006 (Exhibit 9, Bate Stamp 0042).[11]

15      31.  Avenal's Medical Department prepared a Health Care Services Physician Request for

16  Services (CDC 7243) form on February 17, 2006, requesting that Plaintiff be referred to an

17  orthopedic. Health Care Service Physician Request for Services dated February 17, 2006. (Bate Stamp

18  0065) (Exhibit 10).

19      32.  Defendant Sharon Madruga sent Plaintiff a Memorandum dated March 23, 2006,

20  informing him that the referral to an orthopedic specialist was submitted on February 17, 2006, but

21  Avenal had not had the services of an orthopedic surgeon for several months.  Deposition of

22  Defendant Sharon Madruga, 25:22-26:14.  (Exhibit 11); March 23, 2006 Memorandum (Exhibit 12,

23  (Bate Stamp 0091).

24

25

26  [10] Defendants objection that the evidence cited does not support the proposition is sustained.  This fact has been modified accordingly.

27  [11] Defendants have objected on the basis that Plaintiff is not qualified to give an opinion as to the causes of

28  his pain.  Defendant's objection is sustained.  Plaintiff is not qualified to give a medical opinion.  This fact has been modified accordingly.

33.   On March 27, 2006, Plaintiff filled out another Health Services Request Form (CDC 7362) requesting medical treatment for his knee problems.   Declaration of Michael J. Collins ¶ 10 (Exhibit 1); Health Care Service Physician Request for Services dated March 27, 2006. (Exhibit 13).

34.   Rachael Gonzalez in the Medical Department filled out another Health Care Services form (CDC 7243) on March 27, 2006, requesting that Plaintiff be referred to an orthopedic specialist. Deposition of William J. McGuinness, M.D. 88:19-89.11.   (Exhibit 6);   Health Care Service Physician Request for Services dated March 27, 2006.  (Bate Stamp 0359) (Exhibit 14).

35.   The CDC 7243 form filled out on March 27, 2006 indicates that the referral was classified as "urgent." Health Care Service Physician Request for Services dated March 27, 2006. (Exhibit 14, Bate Stamp 0359).

36.   The California Department of Corrections and Rehabilitation sets guidelines requiring that referrals classified as urgent be executed within 10 days, and routine referrals be executed within 90 days.   Deposition of William J. McGuinness, M.D. 45:6-18 (Exhibit 6); Deposition of Sampath Kumar Suryadevara, M.D. 43:2-16. (Exhibit 4).[12]

37.   Defendant William J. McGuinness, M.D. approved the referral to an orthopedic specialist on March 27, 2006.  Health Care Services Physician Request for Services (CDC 7243) form dated March 27, 2006 (Exhibit 14, Bate Stamp 0359).

38.   When Defendant William J. McGuinness, M.D. approved the referral to an orthopedic specialist he understood that the California Department of Rehabilitation and Corrections set guidelines for effectuating referrals in order to eliminate the risk of inmates having increased medical problems due to not obtaining appropriate medical care.  Deposition of William J. McGuinness, M.D. 46: 12-20 (Exhibit 6).[13]

39.  Defendant William J. McGuinness, M.D. understood when he approved the referral to

---

[12] Defendant has argued that this fact is irrelevant.  The court finds this fact to be relevant and material as it may relate to Defendants' state of mind.   Defendants' objection is overruled.

[13] Defendants object to this fact because of a lack of foundation and that this fact is immaterial. Defendants' objection to this fact based on a lack of foundation is overruled for the reasons articulated in footnote 4 supra relating to admissibility of evidence.   The court also finds that this fact is material as this information may relate to Defendant McGuinness' state of mind.

an orthopedic specialist that if the referral was not the effectuated within 10 days that there would be an increased risk that plaintiff could have additional complications or additional orthopedic trouble due to the lack of access to appropriate medical care.   Deposition of William J. McGuinness, M.D. 46: 21-47:3 (Exhibit 6). [14]

40.   The results of the MRI of the left knee taken on November 29, 2005 show that Plaintiff had severe degenerative joint disease and that the meniscus which acts as a buffer between the two bones is not there.  Deposition of William J. McGuinness, M.D. 65: 13-66:3. (Exhibit 6).

41.  Defendants William J. McGuinness, M.D. and Sampath Kumar Suryadevera, M.D. would expect the condition identified in the MRI of the left knee to cause Plaintiff significant pain. Deposition of William J. McGuinness, M.D. 65: 13-66:13. (Exhibit 6);  Deposition of Sampath Kumar Suryadevara, M.D. 55:23-56:1. (Exhibit 4).

42.   Defendant Sampath Kumar Suryadavera, M.D. was the Chief Medical Officer at Avenal State Prison between May 2006 and December 2006.   Deposition of Sampath Kumar Suryadevara, M.D. 13:8-11. (Exhibit 4).

43.   There was still a problem with backlogged inmate referrals to medical specialists in May 2006 when Defendant Sampath Kumar Suryadevera, M.D. arrived at Avenal. Deposition of Sampath Kumar Suryadevara, M.D. 46: 16-19. (Exhibit 4).

44.   Dr. Suryadevera, M.D. was aware that there were inmates with medical needs requiring orthopedic consultations that weren't being implemented when he arrived at Avenal State Prison in May 2006.  Deposition of Sampath Kumar Suryadevara, M.D. 62: 9-16. (Exhibit 4).

45.   The results of the MRI of the left knee taken on November 29, 2005 also show that in addition to the degenerative changes, Plaintiff had a markedly abnormal anterior cruciate ligament with tears in the ligament.  Deposition of Sampath Kumar Suryadevara, M.D.  55: 12-22. (Exhibit 4).

46.   On May 9, 2006, Plaintiff filled out a Reasonable Modification or Accommodation

---

[14] Defendant objects to this fact because of a lack of foundation since Dr. McGuinness did not have personal knowledge that there was an increased risk that plaintiff could have additional orthopedic trouble due to the lack of access or appropriate medical care.  Defendants' objection is overruled as the fact as articulated is an accurate description of  Dr. McGuinness' testimony.  Additionally, the testimony indicates that plaintiff "could" rather than "did" have additional orthopedic trouble due to the lack of appropriate medical care.

1   Request (CDC 1824) form in which he described the problem to be that his legs were starting to

2   deform because of a lack of medical treatment.  Declaration of Michael J. Collins ¶ 18  (Exhibit 1);

3   Reasonable Modification of Accommodation Request (CDC 1824) form dated May 9, 2006 (Exhibit

4   15, Bate Stamp 0092) . [15]

5       47.   Plaintiff's knee pain continued to worsen until the time that the finally received an

6   orthopedic consultation on July 6, 2006.  Declaration of Michael J. Collins ¶ 19  (Exhibit 1). [16]

7       48.  Plaintiff underwent arthroscopic surgery at Corcoran District Hospital on July 25, 2006,

8   due to a mensical tear in the left knee.   Declaration of Michael J. Collins ¶ 20; Corcoran District

9   Hospital physician's orders dated July 25, 2006 (Bate Stamp 459) (Exhibit 16).

10      49.  Following surgery, Plaintiff was given crutches to walk on, prescribed Vicodin for seven

11  days, and then prescribed Montrin for thirty days.  Declaration of Michael J. Collins ¶ 21; Corcoran

12  District Hospital physician's orders dated July 25, 2006 (Exhibit 16, Bate Stamp 459).[17]

13      50.  On August 24, 2006, Plaintiff had an orthopedic follow-up appointment with the doctor

14  who performed surgery on his left knee and recommended physical therapy two times per week for

15  four weeks.  Declaration of Michael J. Collins ¶ 22; Corcoran District Hospital physician's orders

16  dated July 25, 2006 (Exhibit 17, Bate Stamp 0098).

17      51. On October 3, 2006, Plaintiff had another orthopedic evaluation with another orthopedic

18  surgeon who recommended total left knee replacement.  Declaration of Michael J. Collins ¶ 23;

19  (Exhibit 1).

20      52.  On February 26, 2007, Plaintiff underwent total left knee replacement surgery.

21

22      [15] Defendants have objected to this fact on the basis that although it is undisputed that Plaintiff filled out the form, Plaintiff is not qualified to give an opinion as to the causes of his pain.  Defendants' objection is overruled.

23  While Plaintiff is not qualified to give a medical opinion, in this instance, the fact only states that he filled out the form describing the problem to be that his legs were starting to deform because of a lack of medical treatment.

24      [16]  Defendants have argued this fact is disputed because there is no evidence that Plaintiff's condition

25  worsened, nor is Plaintiff qualified to give a medical opinion.  However, this fact only relates to the amount of pain Plaintiff subjectively experienced. Plaintiff is not testifying as to the cause of the pain.  Defendants' objection is overrruled.

26

27      [17] Defendants have objected on the basis that Plaintiff is unqualified to give a medical opinion as to the cause of his pain.  The court sustains this objection to the extent that Plaintiff is not qualified to give a medical

28  opinion regarding the reasons certain medications were prescribed.  The evidence only establishes that Plaintiff was prescribed Montrin and Vicodin.  This fact has been modified accordingly.

Declaration of Michael J. Collins ¶ 24. (Exhibit 1).

    E. <u>Plaintiff's Arguments</u>

    1. <u>Eighth Amendment Claims</u>

Plaintiff argues that Defendants McGuinness and Suryadevara were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  He contends that severe degenerative joint disease is a serious medical need and that prison officials delayed medical treatment which subjected him to an unnecessary and wanton infliction of pain.

<em>a.    Defendant Dr. William J. McGuinness, M.D.</em>

Specifically, Plaintiff argues that Defendant McGuinness recklessly disregarded Plaintiff's serious medical need by failing to ensure that Plaintiff timely saw an orthopedic specialist.  Plaintiff argues that Dr. McGuinness became the Chief Medical Officer on December 12, 2005.  At that time, Dr. McGuinness was aware that there was a problem at Avenal State Prison with inmates not getting access to medical care, and that there had been a backlog of approximately twenty orthopedic referrals at that time.

Plaintiff further contends that his medical records reflected that an orthopedic referral had been ordered back in May 2005, but the referral had not been implemented by the time that Dr. McGuinness took over as Chief Medical Officer.  Plaintiff  first requested Medical treatment on March 1, 2005, due to pain in his leg.  On April 4, 2005, Plaintiff filed out a Reasonable Modification or Accommodation Request Form requesting surgery on his knee because his knee was causing him pain.  On November 29, 2005, Plaintiff underwent an MRI because he was experiencing knee pain. Plaintiff filled out another Reasonable Modification or Accommodation Request Form on December 9, 2005, requesting additional medical treatment.

Although Dr. McGuinness contends that he first learned about Plaintiff's need for orthopedic treatment on March 27, 2006, Plaintiff argues that his medical file contained two previous physician's orders dated December 28, 2005 and February 17, 2006, requesting that Plaintiff see an orthopedic surgeon.  Plaintiff argues that the normal protocol requires that when a physician in the medical department signs a request for a referral to an orthopedic surgeon, the referral comes to the Chief

15

Medical Officer's desk for approval.

Notwithstanding the above, when Dr. McGuinness approved the referral to an orthopedic specialist on March 27, 2006, he understood that the request had been categorized as "urgent." At the time he signed the request, Dr. McGuinness was aware that the CDC set guidelines for implementing "urgent" requests within ten days, in order to eliminate the risk of inmates having increased medical problems due to not obtaining medical care.

On May 9, 2006, Plaintiff filled out a Reasonable Modification or Accommodation Request Form in which he described the problem to be that his legs were starting to deform because of a lack of medical treatment. Plaintiff argues that Dr. McGuinness remained the Chief Medical Officer until May 10, 2006. Plaintiff's referral to be examined by an orthopedic surgeon still had not been implemented by the time Dr. McGuinness left Avenal State Prison. Plaintiff argues that the delay resulted in increased pain and a worsening of his serious medical condition until the time that he finally received an orthopedic consultation on July 6, 2006. He subsequently underwent arthoscopic surgery at Corcoran District Hospital on July 25, 2006, due to a meniscal tear in his left knee. Plaintiff argues that Dr. McGuinness' inaction and the delay in treatment establishes that Dr. McGuinnes was deliberately indifferent to Plaintiff's serious medical condition.

    *b.*   *Defendant Dr. Sampth Kumar Suryadavera, M.D.*

Dr. Suryadavera became the Chief Medical Officer at Avenal State Prison in May 2006. Plaintiff argues when Dr. Suryadevera became the Chief Medical Officer, he was aware that there was a backlog of orthopedic referrals. Plaintiff alleges that Dr. Suryadavera was also aware that CDC had guidelines indicating that requests classified as urgent should be implemented in ten days in order to eliminate the risk of inmates having increase medical problems due to not obtaining the appropriate care. Plaintiff alleges that Dr. Suryadevera was deliberately indifferent to Plaintiff's serious medical condition because he was aware that there were inmates with medical needs requiring orthopedic consultations that were not being implemented.

    2.   California Government Code § 845.6

Plaintiff argues that the same facts outlined above establishes liability pursuant to California

Government Code § 845.6 against both Defendants.  The need for orthopedic surgery arose when Plaintiff's appeal to see an orthopedic surgeon was granted in May 2005.  Both Defendants were public employees who knew or had reason to know of the need for immediate care due to a serious and obvious medical condition, however, both Defendants failed to reasonably summon such care.

F. Defendants' Opposition

Defendants oppose Plaintiffs motion on the basis that neither Defendant has the requisite state of mind to establish any of the causes of action in the complaint.

1. Eighth Amendment Claim

a.      *Defendant Dr. William J. McGuinness, M.D.*

Defendant alleges that Plaintiff has not established the elements of deliberate indifference. Specifically, Plaintiff must establish that the Defendants actually knew of the risk of harm by failing to provide medical treatment, by providing clearly inadequate treatment, or by delaying such treatment.  A prisoner who claims that his treatment for particular symptoms are delayed must show that the delay had a detrimental effect on him.

Defendants argue that while Plaintiff presented evidence of his diagnosis and treatment, he failed to offer any medical evidence in the form of expert testimony on the effect the delay in treatment had on him.  Therefore, he has not satisfied the objectively serious standard under the Eighth Amendment.  Moreover, although Plaintiff contends that Defendants disregarded a serious and known risk, he is not qualified to give a medical opinion.  Accordingly, he failed to establish a genuine issue of material fact regarding an essential element of his claim.

Defendants also argue that since neither Dr. McGuinnes or Dr. Suryadavera ever treated Plaintiff, and had no more than a general awareness of orthopedic backlogs at the prison, there is no causal relationship linking either Defendant to Plaintiff to establish a violation of 42 U.S.C. § 1983. Defendants argue that the facts show that Dr. McGuinness signed a request that Plaintiff be referred to an orthopedic specialist on March 27, 2006, the day the request was given to him.  Thus, no facts

1  have been alleged that Dr. McGuinness did anything after that point to personally cause the delay.[18]

2  Similarly, the causal relationship linking Dr. Suryadevara to Plaintiff is even weaker.   Other than

3  alleging that Dr. Suryadevara inherited a problem of backlogged referrals, Plaintiff has offered no

4  facts alleging that Dr. Suryadevara knew anything about Plaintiff's case or delayed his referral. [19]

5       2.       California Government Code § 845.6

6       Defendants also contend that there is no evidence to support a failure to summon medical care

7  claim against either Defendant pursuant to California Government Code § 845.6.   Plaintiff's need

8  to see an orthopedic surgeon was not a life threatening emergency, or critical enough to invoke this

9  statute which is an exception to California Government Code § 844.6(a)(2).   Section 844.6(a)(a)(2)

10 provides that a public entity is not liable for an injury to a prisoner.

11      In reply, Plaintiff contends that his argument is not necessarily that the delay in treatment

12 worsened his condition, but rather that the delay caused him to needlessly suffer from pain due to

13 severe degernative joint disease in the left knee.   Both Defendants who are doctors and qualified to

14 interpret the results of the MRI scans testified that they would expect the condition to cause Plaintiff

15 significant pain.   Plaintiff's degenerative joint disease, as revealed by the MRI is corroborated by the

16 Plaintiff's subjective complaints of pain.   Each day that Defendant did not provide Plaintiff with a

17 referral that was necessary to treat this left knee, he was forced to experience pain and suffering that

18 had no penological purpose.

19 ///

20

---

21      [18]  Defendants also argue that Dr. McGuinness testified that the lack of orthopedic specialists had been
ongoing for years and was compounded by concerns from the consultants that they were not getting paid.

22 Defendants' opposition at pg. 8: 23- 9: 2. (Doc. 33).  They also argue that Dr. McGuinness tried his best to secure
outside care by contacting other doctors who might work for CDCR, but he had no control over whether they would

23 get paid.  Id.   Defendants cite to pages 36-38; 40-41, 47-49, and 50 of Dr. McGuinness' deposition taken April 30,
2008, however, Defendants did not assert these as undisputed facts, nor did they attach these exhibits to their motion.

24 Accordingly, the court has not considered these arguments.

25      [19] Defendants also argue that the first time that Dr. Suryadevara had any involvement with Plaintiff was after
Plaintiff's surgery was completed.  Further, they contend that Dr. Suryadevara testified that he tried to do what he

26 could do within his power to reduce the backlog by advertising and attempting to recruit staff but that the contracts
were actually arranged by CDCR headquarters.  Defendants' opposition at pg. 9: 9-23. (Doc. 33).  Defendants cite to

27 pages 40-41, 59, 61-63, 68 and 69, and 50 of Dr. Suryadevara's's deposition taken February 19, 2008, however,
Defendants did not assert these as undisputed facts, nor did they attach these exhibits to their motion.   Accordingly,

28 the court has not considered these arguments.

1    G.    Discussion

2         1. Eighth Amendment Claims

3         Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner

4    must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

5    serious medical needs." Estelle v. Gamble, 429 U.S. at 106. Such a claim has two elements: "the

6    seriousness of the prisoner's medical need and the nature of the defendant's response to that need."

7    McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991) overruled on other grounds, WMX Techs

8    Inc., v. Miller, 104 F. 3d 1133, 1136 (9th Cir. 1997). A medical need is serious "if the failure to treat

9    the prisoner's condition could result in further significant injury or the 'unnecessary and wanton

10   infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of

11   a serious medical need include "the presence of a medical condition that significantly affects an

12   individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need,

13   a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer

14   v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).

15        If a prisoner establishes the existence of a serious medical need, he or she must then show that

16   prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S.

17   at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or

18   intentionally interfere with medical treatment, or it may be shown by the way in which prison officials

19   provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Before it

20   can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the

21   indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical

22   malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458,

23   460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051,

24   1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence"

25   and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer,

26   511 U.S. at 835 (quoting Whitley, 475 U.S. at 319). "Deliberate indifference is a high legal

27   standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison

28

19

official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05.  Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (per curiam); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (per curiam).  Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

a. Objective Component

A medical need is serious if the failure to treat it "'could result in further significant injury or the unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin, 974 F.2d at 1059 (quotations and citation omitted)). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  McGuckin, 974 at 1059-1060 citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir.1990); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir.1989).

1   It is undisputed that Plaintiff suffered from significant degenerative joint disease in his left

2   knee.  A reasonable doctor or patient would find this condition worthy of treatment and one that

3   significantly effected Plaintiff's daily activity.  Accordingly, the court finds the objective element of

4   deliberate indifference claim has been established.

5   b.  Subantitle{Subjective Component}

6   i.  *Defendant Dr. William J. McGuinness, M.D.*

7   In addition to establishing a serious medical need, Plaintiff must show that prison officials

8   responded to the serious medical need with deliberate indifference.  Farmer, 511 U.S. at 834.  Since

9   Plaintiff is the moving party, he has the burden of proof which requires that he demonstrate that no

10  reasonable trier of fact could find other than for the moving party.  Calderone v. United States, 799

11  F.2d 254, 259 (6th Cir. 1986).

12  Plaintiff correctly argues that delays in providing medical care may manifest deliberate

13  indifference.  Deliberate indifference can be manifested by prison guards intentionally denying or

14  delaying access to medical care or intentionally interfering with the treatment once prescribed.  Estelle

15  v. Gamble, 429 U.S. at 104-05.  However, to establish a claim of deliberate indifference arising from

16  delay, a plaintiff must show that the delay was harmful.  See  Berry v. Bunnell, 39 F.3d at 1057 (9th

17  Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059.

18  Here, Plaintiff argues that a harmful delay is evidenced by the fact that both doctors indicated

19  that they would expect the condition identified in the MRI of the left knee to cause Plaintiff

20  significant pain.  The court recognizes that the needless suffering of pain may be sufficient to

21  demonstrate further harm.  Clement v. Gomez, 298 F. 3d 898, 904 (9th Cir. 2002).  However, when

22  the party moving for summary judgment would bear the burden of proof, it must come forward with

23  evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

24  Miller v. Glen Miller Productions, Inc., 454 F. 3d 975 (9th Cir. 2006).   In this regard, Plaintiff's

25  reliance on Defendants' medical opinion regarding his condition is insufficient.

26  Although Defendants may be generally qualified to give a medical opinion because they are

27  doctors, neither defendant ever personally examined the Plaintiff, nor are either of them orthopedic

28

specialists.  Thus, they would not qualify as an expert witness under Federal Rules of Evidence 702, and their testimony does not establish that the delay caused Plaintiff pain, or a worsening of the condition.  Further, Defendants' testimony that they would "expect" that Plaintiff would suffer significant pain is speculation regarding Plaintiff's condition and does not establish that Plaintiff did in fact suffer such pain.  Mere speculation does not create a factual dispute for purposes of summary judgment.  Toguchi v. Chung, 391 F. 3d 1051, 1059 (9th Cir. 2004).

Plaintiff's reliance on his own subjective reports of his level of pain is also insufficient to establish his burden that the delay caused him harm.  Plaintiff may provide his opinion on things within a layperson's knowledge, such as his own pain or swelling, but he is not qualified to render a decision regarding the causes of his pain, or that the delay resulted in additional pain or a worsening of his condition.  Federal Rules of Evidence 701.  Such testimony regarding causation would not be admissible at trial.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of America, NT & SA, 285 F. 3d 764, 773 (9th Cir. 2002) (citation omitted); Federal Rule of Civil Procedure 56(e).  Accordingly, Plaintiff has failed to meet his burden for purposes of summary judgment with regard to this element of his claim.

Similarly, the fact that Defendants knew that the referral to an orthopedic specialist made in March 2006 was categorized as urgent, and the CDC has guidelines indicating that 'urgent' referrals should be effectuated within ten days, does not establish that Defendants were deliberately indifferent.  Simply because the facts are undisputed does not make summary judgment appropriate.  Instead, where divergent ultimate inferences may be drawn from the undisputed facts, summary judgment is not proper.  Miller v. Glen Miller Productions, Inc., 454 at 975 citing Braxton-Secret v. A.H. Robins Co., 769 F. 2d 528, 531 (9th Cir. 1985).  While the CDC guidelines may go to Defendants' state of mind, they do not conclusively establish deliberate indifference.  This is especially true in this case since it is undisputed that Plaintiff was seen by doctors and given medications during the period of the delay.

Finally, even if Plaintiff had established that the delay caused him unnecessary pain, or a worsening of his condition, a dispute regarding a material fact exists relating to when Defendant

McGuinness actually became aware of Plaintiff's case.  Defendant McGuinness contends that he became aware of Plaintiff's case on March 27, 2006, and signed Plaintiff's referral to see a orthopedic surgeon that same day.  Plaintiff on the other hand alleges two other requests for referrals were made by the medical staff on February 17, 2006 and December 28, 2005, and that the normal protocol requires that when a physician in the medical department signs a request for a referral to an orthopedic surgeon, the referral comes to the Chief Medical Officer's desk for approval.  As the party opposing the motion, Defendant McGuinness is entitled to an inference that he was not aware of the previous referrals. Jett v. Penner, 439 F. 3d at 1097.  Thus, a dispute regarding when Dr. McGuinness actually received the request for a referral exists.  Id.; Moore v. Jackson, 123 F. 3d 1082 1087 (8th Cir. 1997). The length of time Defendant was aware of Plaintiff's condition is relevant to a determination of whether he was deliberately indifferent and should be resolved by a trier of fact.

   ii. *Defendant Dr. Sampth Kumar Suryadavera, M.D.*

   Plaintiff has also not met his burden in establishing the subjective requirement that Defendant Suryadavera was deliberately indifferent to Plaintiff's medical needs.  In order to prevail on a 1983 cause of action, Plaintiff is required to show that each named defendant (1) acted under color of state law, and (2) committed conduct which deprived Plaintiff of a federal right. Hydrick v. Hunter, 500 F.3d 978, 987 (9th Cir. 2007).  "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Id. at 988 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44.  "[T]here is no pure *respondeat superior* liability under § 1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Id. (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

1   Moreover, in order to establish deliberate indifference, the prison official must not only 'be

2   aware of the facts from which the inference could be drawn that a substantial risk of serious harm

3   exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at

4   837). "'If a prison official should have been aware of the risk, but was not, then the official has not

5   violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of

6   Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).   Deliberate indifference is a high legal

7   standard.   Toguchi v. Chung, 391 F.3d at 1060.

8   The evidence does not support a claim that Dr. Suryadavera "[knew] of and disregard[ed] an

9   excessive risk to [Plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Other than

10  submitting evidence that Dr. Suryadavera was aware that there was a backlog of prisoner referrals to

11  see orthopedic specialists when he assumed the position of Chief Medical Officer at the prison in May

12  2006, Plaintiff provided no facts to establish that Dr. Suradavera was involved in,  or even was aware

13  of Plaintiff's case between May 2006 and July 2006. As such, the court will recommend that

14  Plaintiff's motion for summary judgment relating to this defendant for this cause of action be denied.

15       2.   California Government Code § 845.6

16  In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public

17  employee knew or had reason to know of the need, (2) for immediate medical care, and (3) failed to

18  reasonably summon such care. Id. "Liability under section 845.6 is limited to serious and obvious

19  medical conditions requiring immediate care." Jett v. Penner, 439 F. 3d at 1099 citing Watson v.

20  State, 26 Cal.Rptr.2d 262 (Ct.App.1993). This section does not impose a duty to monitor the quality

21  of care provided. Id.

22  Plaintiff has not met his burden to establish summary judgment for this cause of action for the

23  same reasons as his Eighth Amendment claim.  Plaintiff has established that Defendant McGuinness

24  had knowledge of Plaintiff's need for surgery.  However, a genuine material fact is disputed regarding

25  what point in time Defendant McGuinnes knew of Plaintiff's condition.  Moreover, the undisputed

26  material facts also establish that prison officials did provide medical treatment to Plaintiff.   After

27  Plaintiff received a MRI to diagnose his condition, he was given a leg brace and medication, and

28

ultimately saw a orthopedic surgeon and had surgery on his left knee twice.  Given these facts, a genuine material issue remains regarding whether Plaintiff's condition required immediate care, and whether the delay in treatment constituted a failure to reasonably summon such care.  Further, Plaintiff has failed to meet his burden that Dr. Suryadavera knew or had reason to know of his need for immediate medical care.  Accordingly, Plaintiff's motion for summary judgment as to this cause of action should be DENIED.

H.     Conclusions

        Based on the above, the Court HEREBY RECOMMENDS that :

        1)  Plaintiff's motion for summary judgment, filed August 14, 2008, 2008, be DENIED WITHOUT PREJUDICE;

        2)  Defendant's motion for summary judgment contained with their opposition filed on September 5, 2008 be DENIED WITHOUT PREJUDICE.

        This Findings and Recommendation will be submitted to the United States District Judge Anthony W. Ishii  pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fifteen (15) days** after being served with this Finding and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Finding and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

        IT IS SO ORDERED.

**Dated:**   **February 23, 2009**            _____ **/s/ Gary S. Austin** _____
                                                    UNITED STATES MAGISTRATE JUDGE